UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br>3P HIGHTSTOWN LLC,<br><br>      Debtor. | Chapter 11<br>CASE NO. 21-12957 |

Hearing Date: June 3, 2021

**DEBTOR 3P HIGHTSTOWN LLC'S MEMORANDUM OF LAW
IN OPPOSITION TO THE MOTION OF HIGHTSTOWN ENTERPRISES LLC
SEEKING DISMISSAL OF THE BANKRUPTCY PETITION**

HEROLD LAW, P.A.
25 Independence Boulevard
Warren, New Jersey 07059-6747
(908) 647-1022
Attorneys for Debtors/Plaintiff
Of Counsel:
Craig S. Provorny, Esq. (021601986)

On the Brief:
George W. Crimmins III, Esq. (025942003)

# **PRELIMINARY STATEMENT**

Hightstown Enterprises, LLC ("Hightstown Enterprises") filed a motion dated April 20, 2021 ("Motion to Dismiss") seeking dismissal of the Chapter 11 Bankruptcy Petition of Debtor 3P Hightstown LLC ("3P Hightstown"). The sole argument set forth by Hightstown Enterprises in support of the Motion, however, is specious. Hightstown Enterprises incorrectly alleges 3P Hightstown did not have the authority to file its Petition for bankruptcy protection, claiming there was no authority for member 3P Equity Capital Advisors LLC ("3PECA") to approve the filing of the Bankruptcy Petition without the consent of Hightstown Enterprises, which was not provided, prior to filing. Hightstown Enterprises, however, does not have any voting rights in 3P Hightstown, and as a consequence, the consent of Hightstown Enterprises was not required.

What Hightstown Enterprises does is ignore the fact it obtained its interest in 3P Hightstown in violation of the 3P Hightstown Limited Liability Company Agreement dated December 19, 2019 (the "3P Hightstown LLC Agreement"), and as such, never became a member of 3P Hightstown, never obtained any voting rights in the 3P Hightstown, and had no right to participate in the management of 3P Hightstown, either under the terms of the 3P Hightstown LLC Agreement or under applicable Delaware law.

As such, 3PECA had no duty or obligation to seek the consent of Hightstown Enterprises prior to filing for bankruptcy protection. Similarly, 3PECA had no duty or obligation to seek the consent of the former members who transferred their interests in the LLC to Hightstown Enterprises, as Delaware Law specifies this transfer extinguished any and all rights the transferors had when they were members of 3P Hightstown.

In addition, Hightstown Enterprises failed to disclose to the Court the fact it is the alter-ego of PRC Hightstown LLC ("PRC"), a party which is a co-joint venturer with 3P Hightstown in

the entity 3PRC LLC ("3PRC") pursuant to a Joint Venture Agreement dated December 13, 2019 ("Joint Venture Agreement"). The dispute between 3P Hightstown and PRC is presently the subject of an adversary proceeding related to this case, captioned <u>3P Hightstown LLC v. PRC Group, Inc., PRC Hightstown LLC, Hightstown Enterprises, LLC, 3PRC LLC, Stanley J. Koreyva, Jr and Robert Kaye</u>, Adv. Pro. No. 21-1240 (the "Adversary Proceeding"). In addition to the failure of Hightstown Enterprises to disclose to the Court the existence of the Joint Venture Agreement, Hightstown Enterprises also failed to disclose to the Court Hightstown Enterprises' purchase of the preferred units in 3P Hightstown was in violation of, and a material breach of, the Joint Venture Agreement.

Currently pending before this Court in the Adversary Proceeding is an Order to Show Cause filed by Plaintiff/Debtor in connection with these issues, with a return date of June 17, 2021. A copy of the relevant Order to Show Cause Pleadings is attached as Exhibit C to the Certification of Christopher Otteau ("Otteau Certification"), submitted herewith.

## STATEMENT OF FACTS

1. Debtor 3P Hightstown filed a Petition under Chapter 11 of the Bankruptcy Code on April 8, 2021 (the "Petition").

2. 3P Hightstown is governed by the terms of the 3P Hightstown LLC Agreement. <u>Otteau Certification</u>, ¶ 3.

3. The 3P Hightstown LLC Agreement is governed by the Delaware Limited Liability Company Act, Title 6, §§ 18-101, *et seq.* (the "Delaware LLC Act") and interpreted and enforced in accordance with Delaware state law. <u>3P Hightstown LLC Agreement</u> at Preamble and § 14.12; <u>see also id.</u> This fact was admitted by Hightstown Enterprises in its Motion. <u>Motion to Dismiss</u>, ¶ 6.

4. In December 2019, upon execution of the 3P Hightstown LLC Agreement, individuals named James P. Herring, Jonathan Fisher, John Moorzitz, and Jon Hendel (collectively, the "4J Group") obtained 5,195 preferred membership units in 3P Hightstown for $500,000 and loaned 3P Hightstown a total of $125,000. See Declaration of Peter Wersinger in Support of the Motion to Dismiss dated April 20, 2021 ("Wersinger Declaration"), at ¶¶ 7-10.

5. At formation, the membership of 3P Hightstown consisted of 3PECA, as the Sole Common Member, and the four members of the 4J Group as the four Preferred Members. 3P Hightstown LLC Agreement at 54 and Schedule A; see also Wersinger Declaration at ¶ 11.

6. On or about July 27, 2020, Hightstown Enterprises and the 4J Group entered into a Membership Interest Purchase Agreement, through which Hightstown Enterprises purchased the 4J Group's preferred membership units ("Preferred Units") and obtained an assignment of the 4J Group's loan to 3P Hightstown (the "MIPA"). Wersinger Declaration at ¶12.

7. Hightstown Enterprises alleges it became the Preferred Member of 3P Hightstown through its purchase of the Preferred Units and that its consent was required before 3P Hightstown filed its Chapter 11 Bankruptcy Petition, which was not provided. Id. at ¶13.

8. And, because Hightstown Enterprises did not give its consent to the filing of the Chapter 11 Petition Hightstown Enterprises claims that 3P Hightstown lacked the authority under the Joint Venture Agreement to file the Petition.

9. As set forth below, however, Hightstown Enterprises never became a member of 3P Hightstown due to the fact it failed to follow the requirements for membership under the 3P Hightstown LLC Agreement and the Delaware LLC Act, because the 4J Group's sale of shares was in breach of the terms of the 3P Hightstown LLC Agreement and the terms of the Joint Venture Agreement.

## The Delaware LLC Act

10. § 18-301 of the Delaware LLC Act governs admission of members into an LLC:

> § 18-301. Admission of members.
> * * *
> (b) After the formation of a limited liability company, a person is admitted as a member of the limited liability company:
>
> * * *(2) In the case of an assignee of a limited liability company interest, as provided in § 18-704(a) of this title **and at the time provided in and upon compliance with the limited liability company agreement** or, if the limited liability company agreement does not so provide, when any such person's permitted admission is reflected in the records of the limited liability company; or...

DE Code §18-301(b) (emphasis added).

11. Additional provisions concerning the potential membership of an assignee of a membership interest are set forth in § 18-704:

> § 18-704. Right of assignee to become member.
>
> (a) An assignee of a limited liability company interest becomes a member:
>
> (1) **As provided in the limited liability company agreement;**
>
> (2) Unless otherwise provided in the limited liability company agreement, upon the vote or consent of all of the members of the limited liability company;...

6 DE Code § 18-704 (emphasis added).

12. As set forth below, the 3P Hightstown LLC Agreement provides very clear procedures for transfer of shares in the LLC and entry of assignees as members in the LLC.

13. For Hightstown Enterprises to have become a member of 3P Hightstown and not merely an assignee of the 4J Group's interests the Delaware LLC Act required Hightstown Enterprises to comply with the 3P Hightstown LLC Agreement and/or obtain the consent of all members of 3P Hightstown LLC. See id. and §18-301(b).

14. Neither Hightstown Enterprises nor the 4J Group, however, sought 3PECA's consent for Hightstown Enterprises to become a member of the 3P Hightstown, and such consent was neither volunteered nor given. Otteau Certification, at ¶ 23.

**Hightstown Enterprises failed to become a member of the LLC under the 3P Hightstown**

**3P Hightstown LLC Agreement.**

15. The 3P Hightstown LLC Agreement governs admission of new members into 3P Hightstown, including § 4.01:

> Section 4.01 Admission of New Members.
> ***
> (b) In order for any Person not already a Member of the Company to be admitted as a Member, whether pursuant to an issuance or Transfer of Units, **such Person shall have executed and delivered to the Company a written undertaking substantially in the form of the Joinder Agreement**. Upon the amendment of the Members Schedule by the Board and the satisfaction of any other applicable conditions, including, if a condition, the receipt by the Company of payment for the issuance of the applicable Units, such Person shall be admitted as a Member and deemed listed as such on the books and records of the Company and thereupon shall be issued his, her, or its Units. The Board shall also adjust the Capital Accounts of the Members as necessary in accordance with Section 5.03.

(emphasis added).

16. Hightstown Enterprises, however, never executed and delivered to 3P Hightstown the required written undertaking. Otteau Certification, at ¶ 22. On this ground alone Hightstown Enterprises failed to become a member of 3P Hightstown.

17. § 10.03 of the 3P Hightstown LLC Agreement also requires a proposed assignor of membership interests to provide all other members sixty (60) days' notice and an opportunity to exercise a right of first refusal:

> Section 10.03 Right of First Refusal.
>
> (a) Offered Units. Subject to the terms and conditions specified in this Section 10.03, each Member shall have a right of first refusal if any other

> Member (the "Offering Member") receives a bona fide offer that the Offering Member desires to accept to Transfer all or any portion of the Units he, she, or it owns (the "Offered Units"). Each time the Offering Member receives an offer for a Transfer of all or any portion of his, her, or its Units, the Offering Member shall first make an offering of the Offered Units to the other Members (the "ROFR Rightholders") in accordance with the following provisions of this Section 10.03 prior to Transferring such Offered Units (other than Transfers that (i) are permitted by Section 10.02, or (ii) are proposed to be made by a Dragging Member or required to be made by a Drag-Along Member pursuant to Section 10.04.
>
> (b) Offer Notice.
>
> (i) The Offering Member shall, within five (5) Business Days of receipt of the Transfer offer, give written notice (the "Offering Member Notice") to the Company and the ROFR Rightholders stating that he, she, or it has received a bona fide offer for a Transfer of his, her, or its Units and specifying: (A) the amount of Offered Units to be Transferred by the Offering Member; (B) the name of the Person who has offered to purchase such Offered Units (including, to the extent known by the Offering Member after using commercially reasonable efforts to obtain such information, all parties that directly or indirectly hold interests in such Person, unless such Person is a publicly traded company); (C) the purchase price and the other material terms and conditions of the Transfer, including a description of any non-cash consideration in sufficient detail to permit the valuation thereof; and (D) the proposed date, time, and location of the closing of the Transfer, **which shall not be less than sixty (60) days from the date of the Offering Member Notice**.

(emphasis added).

18. 4J Group and Hightstown Enterprises entered into the MIPA on or about July 27, 2020 for the sale of the 4J Group's sale of their Preferred Units to Hightstown Enterprises. Wersinger Declaration at ¶12.

19. The MIPA specifies a closing "that shall occur no later than September 12, 2020, **Time Being of the Essence**" Wersinger Declaration, Exhibit E, at 2 (emphasis in original).

20. The 4J Group provided to 3PECA its Offering Member Notice on July 31, 2020, specifying the September 12, 2020 closing date identified in the MIPA. Otteau Certification at §19.

21. Contrary to the explicit terms of the 3P Hightstown LLC Agreement the 4J Group's Offering Member Notice failed to provide the requisite sixty (60) days advance notice of the sale of their Preferred Units (see id.), and as a result, the transfer of the 4J Group's shares to Hightstown Enterprises was in violation of the 3P Hightstown LLC Agreement.

22. The actions of Hightstown Enterprises in soliciting and purchasing the Preferred Units held by the 4J Group were also in violation of confidentiality and non-solicitation provisions of the aforementioned December 13, 2019 Joint Venture Agreement between 3P Hightstown and PRC Hightstown LLC, an affiliate of Hightstown Enterprises, which movant improperly failed to disclose to the Court in its motion. See Otteau Certification ¶¶ 7-17.

23. Hightstown Enterprises also improperly failed to identify these very same matters at issue between 3P Hightstown and 3PRC are the subject of an adversary proceeding related to this case, captioned 3P Hightstown LLC v. PRC Group, Inc., PRC Hightstown LLC, Hightstown Enterprises, LLC, 3PRC LLC, Stanley J. Koreyva, Jr and Robert Kaye, Adv. Pro. No. 21-1240 (the "Adversary Proceeding"). See id. at ¶ 26.

24. Currently pending before this Court in the Adversary Proceeding is an Order to Show Cause and Verified Complaint filed by Plaintiff/Debtor in connection with these issues, with a return date of June 17, 2021. Id.  A copy of the relevant Order to Show Cause Pleadings is attached to the Otteau Certification.

## LEGAL ARGUMENT

Hightstown Enterprises argues the Chapter 11 Bankruptcy Petition of 3P Hightstown should be dismissed based on an alleged violation of § 4.06 (b)(ix) of the 3P Hightstown LLC Agreement by 3PECA, claiming 3PECA was required to obtain "the prior approval of the holders

- 7 -

of a majority of the outstanding Preferred Units voting separately as a class." This assertion is incorrect.

1. **THE 4J GROUP HAD NO RIGHTS OR POWERS TO VOTE ON OR OTHERWISE CONSENT TO THE FILING OF THE PETITION.**

The 4J Group collectively held all 5,195 of the outstanding Preferred Units from the formation of the LLC on December 19, 2019, until selling these shares, which occurred upon information and belief on or about September 12, 2020 to Hightstown Enterprises. See Otteau Certification, ¶ 6. During that time, under the terms of the 3P Hightstown LLC Agreement the members of the 4J Group were Preferred Members of 3P Hightstown. Yet, these membership interests terminated upon the sale of the shares to Hightstown Enterprises. See 3P Hightstown LLC Agreement § 4.04 ("As soon as any Person who is a Member ceases to hold any Units, such Person shall no longer be a Member."); see also Delaware LLC Act § 18-702(b)(3) ("A member ceases to be a member and to have the power to exercise any rights or powers of a member upon assignment of all of the member's limited liability company interest."), and Lusk v. Elliott, Civil Action No. 16326, 1999 Del. Ch. LEXIS 172, at *11 (Ch. Aug. 13, 1999) ("[A]n assignment...has the effect of extinguishing all the assignor's membership rights.").

3P Hightstown filed its bankruptcy Petition on April 8, 2021, seven (7) months after the transfer of the 4J Group's shares. Otteau Certification, at ¶ 25. As a result, under § 18-702(b)(3) of the Delaware LLC Act, the consent of the 4J Group was not required prior to filing of the Petition.

2. **HIGHTSTOWN ENTERPRISES HAD NO RIGHTS OR POWERS TO VOTE ON OR OTHERWISE CONSENT TO THE FILING OF THE PETITION.**

Although not expressly stated, Hightstown Enterprises presumably argues it became the sole Preferred Member of the LLC upon its purchase of the 4J Group's shares, and as a result, its

consent was required prior to 3P Hightstown filing of the Petition. This position, however, is not supported by applicable law, because Hightstown Enterprises never became anything more than an assignee of the 4J Group's shares, with no voting rights or any other rights to participate in any way in 3P Hightstown.

### A. **Because it failed to comply with the express requirements for membership Hightstown Enterprises never became a member of 3P Hightstown.**

The Delaware LLC Act sets forth requirements that permit an assignee of an interest in an LLC to become a member of an LLC:

> § 18-301. Admission of members.
> * * *
> (b) After the formation of a limited liability company, a person is admitted as a member of the limited liability company:
> * * *
> (2) In the case of an assignee of a limited liability company interest, as provided in § 18-704(a) of this title **and at the time provided in and upon compliance with the limited liability company agreement** or, if the limited liability company agreement does not so provide, when any such person's permitted admission is reflected in the records of the limited liability company; or...

§ 18-301(b)(2) (emphasis added).

In addition, § 18-704(a) of the Delaware LLC Act provides, "An assignee of a limited liability company interest becomes a member: (1) **As provided in the limited liability company agreement**; [or] (2) Unless otherwise provided in the limited liability company agreement, upon the vote or consent of all of the members of the limited liability company." (emphasis added). Neither the 4J Group nor Hightstown Enterprises sought or obtained 3PECA's consent for Hightstown Enterprises to become a member. Otteau Certification at ¶ 23. Thus, the potential membership of Hightstown Enterprises is governed by **and limited to** the terms of the 3P Hightstown LLC Agreement.

§ 4.01(b) of the 3P Hightstown LLC Agreement provides,

- 9 -

> In order for any Person not already a Member of the Company to be admitted as a Member, whether pursuant to an issuance or Transfer of Units, such Person shall have executed and delivered to the Company a written undertaking substantially in the form of the Joinder Agreement.

<u>3P Hightstown LLC Agreement</u>, at 18. The Joinder Agreement is attached to the 3P Hightstown LLC Agreement as Exhibit A. The aforementioned Joinder Agreement states:

> [The undersigned] shall be fully bound by, and subject to, all of the covenants, terms and conditions of the 3P Hightstown LLC Agreement as though an original party thereto and shall be deemed, and is hereby admitted as, a Member for all purposes thereof and entitled to all the rights incidental thereto, and shall hold the status of Preferred Member.

<u>Id.</u> at Exhibit A.

Execution of the Joinder Agreement is an express precondition to membership in 3P Hightstown. Nevertheless, Hightstown Enterprises failed to sign and deliver a copy of the Joinder Agreement to 3P Hightstown, and never sought or obtained the consent of 3PECA to become a member of the LLC. <u>Otteau Certification</u> at ¶¶ 21-22. Under Delaware Law, therefore, Hightstown Enterprises did not become a Preferred Member of the LLC nor did Hightstown Enterprises acquire any voting rights.

It should also be noted, as part of the MIPA, Hightstown Enterprises not only agreed to comply with the requirements for transfer of shares under the 3P Hightstown LLC Agreement, but also undertook the responsibility of executing the Joinder Agreement:

> 2. The transfer of all 4J Group Preferred Membership Interests to H-Town Enterprises shall be effected in accordance with the applicable provisions and procedures set forth in the Limited Liability Company Operating Agreement of 3P Hightstown, LLC, dated December 19, 2019 (the "3P Operating Agreement"), including the provisions of Article X of the 3P Operating Agreement.
>
> 3. H-Town Enterprises, at its sole cost and expense, shall cause and arrange for the preparation of all documents and notices and, to the extent applicable, any and all required consents and authorizations, if any, that may

>be necessary to effectuate the transfer and assignment of the 4J Group Preferred Membership Interests to H-Town Enterprises at the Closing.

MIPA §§ 2-3. Hightstown Enterprises' failure to take the steps necessary to become a member of 3P Hightstown is due to its own failure to act, and not any actions or omissions of any other party.

### B. As a non-member assignee of the Preferred Units, Hightstown Enterprises had no right or entitlement to vote on or object to 3PECA's filing of the Petition.

Given Hightstown Enterprises was a mere non-member assignee of the 4J Group's Preferred Units, it was not entitled to any rights or powers of Preferred Membership:

> (b) Unless otherwise provided in a limited liability company agreement:
>
> (1) An assignment of a limited liability company interest does not entitle the assignee to become or to exercise any rights or powers of a member;

Delaware LLC Act § 18-702(b)(1); see also 3P Hightstown LLC Agreement § 4.10 ("The Members shall have the power to exercise any and all rights or powers granted to Members pursuant to the express terms of this Agreement and the Delaware Act.") and Delaware LLC Act § 18-704 ("An assignee **who has become a member** has, to the extent assigned, the rights and powers, and is subject to the restrictions and liabilities, of a member under a limited liability company agreement and this chapter.") (emphasis added); see also Eureka VIII, LLC v. Niagara Falls Holdings, LLC, 899 A.2d 95, 115 (Del. Ch. 2006) ("An assignable limited liability interest [without membership in the LLC] is essentially a financial interest in the member's dividend distributions and any future sale proceeds.").

The fact Hightstown Enterprises had no right to exercise any rights or powers as a Preferred Member of the LLC means 3PECA was the sole member (of any class) of 3P Hightstown. As such, 3PECA was not required to obtain the consent of any other party prior to filing the Petition. Hightstown Enterprises' motion to dismiss the Petition therefore is without merit and must be denied.

**3.    THE 4J GROUP BREACHED THE 3P HIGHTSTOWN LLC AGREEMENT BY FAILING TO PROVIDE 3PECA WITH THE FULL SIXTY (60) DAYS' NOTICE OF A RIGHT OF REFUSAL.**

§ 10.03 of the 3P Hightstown LLC Agreement requires a proposed assignor of membership interests to provide all other members an opportunity to exercise a right of first refusal in the event the proposed assignor receives a bona fide offer to purchase units in the LLC. "Each time the Offering Member receives an offer for a Transfer of all or any portion of his, her, or its Units, the Offering Member shall first make an offering of the Offered Units to the other Members..." The 4Js failed to provide the requisite notice under § 10.03 (Otteau Certification at ¶ 20), and as a result, their transfer of the Preferred Units to Hightstown Enterprises was in breach of the 3P Hightstown LLC Agreement, meaning the transfer of the Preferred Units did not provide Hightstown Enterprises with any voting rights.

The 3P Hightstown LLC Agreement specifies the following notice periods:

> The Offering Member shall, within five (5) Business Days of receipt of the Transfer offer, give written notice (the "Offering Member Notice") to the Company and the ROFR Rightholders stating that he, she, or it has received a bona fide offer for a Transfer of his, her, or its Units and specifying: ... (D) the proposed date, time, and location of the closing of the Transfer, **which shall not be less than sixty (60) days from the date of the Offering Member Notice**.

3P Hightstown LLC Agreement §10.03(b)(i) (emphasis added).

Here, the MIPA was executed on July 27, 2020, specifying a closing "that shall occur no later than September 12, 2020, **Time Being of the Essence**" Wersinger Declaration, Exhibit E, at 2 (emphasis in original). The Offering Member Notice was provided to 3P Hightstown by way of correspondence dated July 31, 2020, which also specified a September 12, 2020, closing. Otteau Certification, Exhibit B. Given § 10.03's minimum sixty (60) day advance notice period for the right of first refusal and given a scheduled closing of September 12, 2020, the 4J Group was

required to extend the right of first refusal no later than July 14, 2020. The Offering Member Notice was provided seventeen (17) days late. As a result, the sale of the Preferred Units to Hightstown Enterprises was conducted in violation of §10.03 and §10.01(a) of the 3P Hightstown LLC Agreement ("General Restrictions on Transfer", which requires compliance with § 10.03), thereby depriving Hightstown Enterprises of any right to vote.

**4. HIGHTSTOWN ENTERPRISES' SOLICITATION AND PURCHASE OF 3P HIGHTSTOWN'S INVESTORS WAS IN VIOLATION OF THE JOINT VENTRUE AGREEMENT.**

The solicitation and purchase of the Preferred Units by Hightstown Enterprises from the 4J Group was a material breach of the Joint Venture Agreement.

Hightstown Enterprises is an affiliate of PRC Hightstown, which is 3P Hightstown's co-joint venturer in 3PRC. Id. at ¶ 4. Stanley J. Koreyva Jr. ("Koreyva") was the President and Chief Operating Officer, and Robert Kaye ("Kaye") is the sole member and Chairman of PRC, PRC Group LLC ("PRC Group"), and Hightstown Enterprises. Id. at ¶ 8.

Koreyva, as agent of Hightstown Enterprises, 3PRC and PRC Hightstown, and upon information and belief at the direction of Kaye, contacted the 4J Group without the knowledge or consent of Christopher Otteau, 3PECA, or 3P Hightstown. Id. at ¶¶ 8-9. The identity of no less than two members of the 4J Group only became known to PRC pursuant to confidential information of 3P Hightstown or through discussions or communications with 3P Hightstown, its affiliates, and/or their respective representatives. Id. at ¶ 7.

Over the weekend of May 9, 2020 and May 10, 2020, Koreyva communicated with the 4J Group related to their investments in 3P Hightstown. Id. at ¶ 11. These communications were in breach of § 7.9 (Non-Solicitation of Investors) of the Joint Venture Agreement, which states:

> 7.9 Non-Solicitation of Investors. During the term of this Agreement and for a period of three years thereafter, without obtaining the prior consent of

> 3P Hightstown, **PRC shall not, and shall not authorize or permit any of its Affiliates, or its, or its Affiliates' respective Representatives, to, directly or indirectly, approach or solicit, or discuss, negotiate, offer or accept any business opportunity or offer of investment from, any Person (including any member of 3P Hightstown)** that becomes known to PRC, directly or indirectly pursuant to any Confidential Information of 3P Hightstown or any of its Affiliates or any discussions or communications with 3P Hightstown or any of its Affiliates or their respective Representatives, or induce or attempt **to induce or otherwise influence any such Person to alter, terminate, or breach its contractual or other business relationship with 3P Hightstown** or any of its Affiliates. Notwithstanding the foregoing, PRC and its affiliates shall have the right to approach or solicit, or discuss, negotiate, offer or accept any business opportunity or offer of investment from or with Circle Squared Alternative.

Id., Exhibit A, at 22 (emphasis added).

Christopher Otteau was informed by members of the 4J Group that during these communications Koreyva made false disparaging remarks about him, including, but not limited to, falsely alleging he had embezzled the 4J Group's investments for himself. Id. at ¶ 12. These communications were made with the specific design of causing personal financial harm to Mr. Otteau and his reputation and to destroy his professional and personal relationships with the 4J Group. Id. at ¶ 13.

It also was clear from Mr. Otteau's communications with the 4J Group that Koreyva had disclosed to them confidential information regarding 3PRC. Id. at ¶ 14. This was also a violation of the confidentiality provisions of § 7.8 of the Joint Venture Agreement. See id., Exhibit A at 21-22.

Following their communications with Koreyva, the 4J Group demanded the return of their investments in 3P Hightstown. Id. at ¶ 15. Thereafter, in violation of § 7.9 of the Joint Venture Agreement Hightstown Enterprises solicited the purchase of the 4J Group's equity and debt investments in 3P Hightstown, as memorialized in the July 27, 2020 MIPA (without the consent of 3P Hightstown, 3PECA, or Mr. Otteau).

By disclosing confidential information of 3PRC to the 4J Group without the knowledge or consent of 3P Hightstown, Koreyva, PRC, PRC Group, and Hightstown Enterprises, at the direction of Kaye, violated the confidentiality provisions of § 7.8 of the Joint Venture Agreement.

By soliciting the sale of the 4J Group's equity and debt interests in 3P Hightstown, without the knowledge or consent of 3P Hightstown, Koreyva, PRC, PRC Group, and Hightstown Enterprises, at the direction of Kaye, violated the non-solicitation provisions of § 7.9 of the Joint Venture Agreement.

As a result of these breaches of the Joint Venture Agreement the acquisition of the interests of the 4J group of investors was improper, and as a result, accorded Hightstown Enterprises no voting or management rights in 3P Hightstown.

**CONCLUSION**

Based on the foregoing movant Hightstown Enterprises has failed to sustain its burden to establish that 3P Hightstown LLC's Chapter 11 Bankruptcy Case should be dismissed, as the acquisition of the interests of the 4J Group's interest in 3P Hightstown was in violation of the 3P Hightstown LLC Agreement, the Delaware LLC Act, and the Joint Venture Agreement. As such, Hightstown Enterprises has no voting rights or management rights in 3P Hightstown, and certainly had no right to consent or not consent to the 3P Hightstown Chapter 11 Petition. As a result, Plaintiff respectfully requests the Motion to Dismiss the Chapter 11 Petition of 3P Hightstown be denied.

       Respectfully submitted,

       HEROLD LAW, P.A.
       Attorneys for Debtor/Plaintiff
       3P Hightstown, LLC


       By: /s/ Craig S. Provorny
           Craig S Provorny, Esq.

Dated: May 25, 2021