FOR PUBLICATION

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-2(c)**<br><br>In re:<br><br>3P HIGHTSTOWN, LLC,<br><br>                              Debtor. | Case No. 21-12957 (MBK)<br><br>Chapter 11<br><br>Hearing Date:  July 20, 2021<br><br>Judge:    Michael B. Kaplan |

**Douglas G. Leney, Esq.**
Archer & Greiner, P.C.
One Centennial Square
Haddonfield, NJ 08033
*Counsel for Movant Hightstown Enterprises, LLC*

**Craig Provorny, Esq.**
Herold Law, P.A.
25 Independence Boulevard
Warren, NJ 07059
*Special Counsel for Chapter 11 Debtor*

**Joseph M. Shapiro, Esq.**
Middlebrooks Shapiro, P.C.
841 Mountain Avenue, 1st Floor
Springfield, NJ 07081
*Counsel for Chapter 11 Debtor*

**MEMORANDUM OPINION**

This matter comes before the Court on a Motion ("Motion") (ECF No. 15) filed by Hightstown Enterprises, LLC ("Hightstown Enterprises"), a putative creditor[1], seeking dismissal of the chapter 11 bankruptcy case filed by the Debtor 3P Hightstown, LLC ("Debtor" or "3P Hightstown").  This matter first came before the Court on June 3, 2021, at which time the Court requested supplemental briefing from the parties.  Specifically, the parties were directed to address whether the Debtor had the authority to file unilaterally for bankruptcy without the

---

[1] The Debtor contends that Hightstown Enterprises is not the entity which funded the acquisition of certain debts prepetition and, thus, is not a creditor with standing to bring the instant motion. The Court addresses this argument below.

consent of its preferred equity class, pursuant to Section 4.06(b)(xi) of the 3P Hightstown Limited Liability Company Agreement dated December 19, 2019 (the "LLC Agreement"), or whether that section of the LLC Agreement should be void as contrary to public policy. The parties submitted additional briefing on this public policy issue and the matter was back before the Court on July 1, 2021. During the hearing held on that date, Counsel for the Debtor raised the issue of Hightstown Enterprises' standing to bring the instant motion. In light of the unresolved standing issue, the Court declined to issue a ruling and, instead, asked the parties to submit yet further briefing as to Hightstown Enterprises' standing to challenge the bankruptcy. The parties have since filed their supplemental arguments. The Court has reviewed all submissions and has considered fully the arguments presented during oral argument on the hearing dates of June 3, 2021, July 1, 2021, and July 20, 2021. For the reasons set forth below, the Court will DISMISS the bankruptcy case.

**I.    Background**

The factual background and procedural history of this matter are well known to the parties and will not be repeated in detail here. For a more comprehensive recitation of the facts and history of this case, the Court directs the parties to the Declaration of Peter Wersinger, Senior Vice President and General Counsel to Hightstown Enterprises and the accompanying Exhibits (ECF No. 15-2). In relevant part, on or about March 22, 2019, 3P Equity Capital Inc. ("3PEC"), an affiliate of the Debtor, borrowed the original principal amount of $420,000.00 (the "Progress Loan") from Progress Direct LLC, as lender ("Progress"). The Progress Loan is secured by, among

other collateral, a minority membership interest held at the time by 3PEC in a joint venture known as 3PRC, LLC (the "3PRC Minority Membership Interest"). In September 2019, 3PEC assigned its 3PRC Minority Membership Interest (subject to the lien and security interest held by Progress) to the Debtor, 3P Hightstown. On or about September 15, 2020, Hightstown Enterprises entered into a transaction with Progress, reflected in an Assignment of Note and Loan Documents, pursuant to which Hightstown Enterprises paid Progress the aggregate sum of $425,000.00 in exchange for an assignment of the Progress Loan and all rights associated therewith, including the lien on the Debtor's 3PRC Minority Membership Interest.

In December 2019, the Debtor sought additional capital investment from four (4) individuals (collectively, the "4J Group"). Specifically, in exchange for $500,000.00 from the 4J Group, the individuals comprising the 4J Group were given preferred membership units in the Debtor. On top of the equity investment made by the 4J Group as set forth above, the 4J Group also loaned the Debtor a total of $125,000.00 in subordinated financing. The 4J Group's admission as members of the Debtor is evidenced by the LLC Agreement, which is signed by 3P Equity Capital Advisors, LLC ("3PECA") as "Sole Common Member" and by each of the individuals comprising the 4J Group, each as a "Preferred Member." On or about July 27, 2020, Hightstown Enterprises paid the 4J Group the aggregate sum of $625,000.00 in exchange for (i) a transfer of the 4J Group's preferred membership interests in the Debtor, and (ii) an assignment of the 4J Group Loan. As a result of this transaction, Hightstown Enterprises became the Preferred Member of the

Debtor, holding 5,196 preferred membership units and preferred unit capital contributions totaling $500,000.[2]

On April 9, 2021, 3P Hightstown filed a voluntary petition under chapter 11 of the Bankruptcy Code. On April 20, 2021, Hightstown Enterprises filed the instant Motion seeking dismissal of 3P Hightstown's bankruptcy case. Specifically, Hightstown Enterprises asserts that, pursuant to the LLC Agreement, the Debtor lacks authority to file a petition in bankruptcy absent certain prerequisites, which were not obtained. The Debtor opposes the motion and, as set forth above, the Court has requested several rounds of supplemental briefing to resolve outstanding issues.

## II.    Discussion

During oral argument, the Debtor challenged Hightstown Enterprises' standing to bring the Motion. Therefore, prior to addressing the merits of the Motion, the Court will address the threshold issue of standing.

### A. Standing

As an initial matter, the Court must address the issue of whether it is necessary for Hightstown Enterprises to have standing for this Court to render a decision on its Motion to Dismiss. The short answer is no because this Court may raise the issue *sua sponte*. Bankruptcy

---

[2] Again, the Debtor contests that Hightstown Enterprises is the entity which acquired (or funded the acquisition of) either the Progress Loan or the 4J Group's interests and loan. Rather, the Debtor contends that Hightstown Enterprises' books and records reflect that funding was provided by the joint venture, 3PRC, LLC. Hightstown enterprises disputes this assertion and submits that funding came from a capital infusion by a principal, Robert M. Kaye, who independently borrowed the funds necessary for the transaction. Notwithstanding, this Court need not resolve the issue of ownership or the source of funding. As set forth in this Opinion, Hightstown Enterprises' standing to bring this Motion is not dispositive.

courts may dismiss a case under Section 1112(b) *sua sponte* if **cause** is established. Section 1112(b)(1) states:

> [O]n request of a party in interest, and after notice and a hearing . . . the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, **if the movant establishes cause**.

11 U.S.C. § 1112(b)(1) (emphasis added).

There is no question that the parties had proper notice and the opportunity for a hearing as required under § 1112(b). The concept of "notice and hearing"—of kind required prior to dismissal of a chapter 11 case under the "for cause" dismissal provision—is a flexible one, and the type of notice and hearing that is required depends on what is appropriate in the particular circumstances. 11 U.S.C.A. § 1112(b); *See In re Irasel Sand, LLC*, 569 B.R. 433 (Bankr. S.D. Tex. 2017). The Motion to Dismiss was filed more than three months ago on April 20, 2021 and the parties appeared at three separate hearings to litigate various issues stemming from this Motion. This Court is satisfied that the parties were properly noticed and afforded the opportunity to be heard as required under § 1112(b).

Despite the plain language requiring a "party in interest" to raise dismissal, courts "generally hold that after the 1986 amendments to Section 105 of the Bankruptcy Code, the Bankruptcy Court has the authority to dismiss a bankruptcy petition **for cause** under Section 1112(b) **on its own motion**." *In re Munteanu*, No. 06-6108, 2007 WL 1987783, at *3 (E.D.N.Y. June 28, 2007) (referencing a bankruptcy court's equitable powers under 11 U.S.C. § 105) (emphasis added). Improper authority to file for bankruptcy is often cited as cause for dismissal.

5

*See id*. (citing *In re A–Z Elec., LLC,* 350 B.R. 886, 891 (Bankr. D. Idaho 2006) (holding that § 1112(b) provided grounds for dismissal of case filed by individual who lacked authority to file the petition on behalf of the debtor company); *In re Real Homes, LLC,* 352 B.R. 221, 225 (Bankr. D. Idaho 2005) (same); *In re J&J Prop. Holdings, LLC,* 2004 WL 5463804 at *2 (Bankr. W.D.N.C. Jan. 20, 2004) (same)). In *In re Munteanu*, the district court found that the bankruptcy court did not abuse its discretion when it raised the issue of dismissal *sua sponte* and without a motion from the U.S. Trustee. *Id*.

In addition, the Court has authority to dismiss this case without relying on § 1112(b). Should a court find "that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition." *Price v. Gurney,* 324 U.S. 100, 106, 65 S. Ct. 513, 89 L.Ed. 776 (1945). Further, should a court find that a debtor, who acts on behalf of a corporation, filed bankruptcy without the prerequisite authority, "the Court . . . would be required to dismiss [that] unauthorized filing even if § 1112(b) were not in the Bankruptcy Code." *In re ComScape Telecommunications, Inc.*, 423 B.R. 816, 830 (Bankr. S.D. Ohio 2010); *citing In re Southern Elegant Homes, Inc.,* 2009 WL 1639745 at *1 (Bankr. E.D.N.C. June 9, 2009) (dismissing unauthorized petition without relying on § 1112(b)); *In re N2N Commerce, Inc.,* 405 B.R. 34, 41 (Bankr. D. Mass. 2009) (same); *In re Telluride Income Growth Ltd. P'ship,* 311 B.R. 585, 591 (Bankr. D. Colo. 2004) (same); *Kelly v. Elgin's Paint & Body Shop, Inc. (In re Elgin's Paint & Body Shop, Inc.),* 249 B.R. 110, 112 (Bankr. D.S.C. 2000) (same).

Accordingly, Hightstown Enterprises' standing to bring a motion seeking dismissal under § 1112(b) is of no import because this Court may *sua sponte* raise the issue of whether cause for dismissal exists. As will be discussed, the Court finds that the Debtor did not have the proper authority to commence the instant bankruptcy proceeding. Thus, this Court is permitted—and indeed compelled—to dismiss the unauthorized filing under § 105 and applicable case law.

### B. Authority to File for Bankruptcy Under the LLC Agreement

The United States Supreme Court holds that, with respect to corporations, the entity vested with "the power of management" has the requisite authority to file a bankruptcy petition. *Price v. Gurney*, 324 U.S. 100, 104, 65 S. Ct. 513, 89 L. Ed. 776 (1945). If a bankruptcy petition is filed by an entity lacking the "power of management" in the corporate context, "the bankruptcy case must be dismissed for want of legal authority to do so." *In re Advanced Vascular Res. of Johnstown, LLC*, 590 B.R. 689, 691 (Bankr. W.D. Pa. 2018) (citing *In re NNN 123 N. Wacker, LLC*, 510 B.R. 854, 858-59 (Bankr. N.D. Ill. 2014). "This precept of law operates in all corporate cases, including in those cases filed by a limited liability company." *In re Advanced Vascular*, 590 B.R. at 691 (citing *In re Avalon Hotel Partners, LLC*, 302 B.R. 377 (Bankr. D. Or. 2003)). Thus, the first question for this Court is whether the Debtor had requisite authority to file the chapter 11 bankruptcy.

The filing of a bankruptcy petition "is a specific act requiring specific authorization." *N2N Commerce,* 405 B.R. at 41 (internal quotation marks omitted). It is well-settled that applicable state law determines whether a bankruptcy filing was authorized. *See Price,* 324 U.S. at 106, 65 S. Ct. 513 (holding that those "who purport to act on behalf of the corporation" must have "been

7

granted authority by local law to institute the proceedings"); *In re Sino Clean Energy, Inc.*, 901 F.3d 1139, 1142 (9th Cir. 2018) ("[S]tate law dictates which persons may file a bankruptcy petition on behalf of a debtor corporation."); *In re ComScape Telecommunications, Inc.*, 423 B.R. at 829–32 (collecting cases and stating that "bankruptcy courts generally look to state law to determine who is authorized to file a voluntary petition for a corporation, partnership or other kind of organizational entity"). Hightstown Enterprises' Motion argues that the Debtor lacked authority to file bankruptcy based on the parties' LLC Agreement.

Indeed, the parties' LLC Agreement includes a provision which limits the Debtor's management's ability to take certain actions, including the initiation of a bankruptcy proceeding. Specifically, Section 4.06, titled "Voting," states the following, in relevant part:

> (b) Notwithstanding anything to the contrary contained in this Agreement, until such time as the Preferred Unreturned Capital Value has been reduced to zero, the Company shall not, and shall not permit any of the Company Subsidiaries to, engage in or cause any of the following transactions or take any of the following actions, and the Board shall not permit or cause the Company or any of the Company Subsidiaries to engage in, take, or cause any such action, in each case except with the prior approval of the holders of a majority of the outstanding Preferred Units voting separately as a class:
>
> . . .
>
> (xi) the initiation by the Company or any Company Subsidiary of a bankruptcy proceeding (or consent to any involuntary bankruptcy proceeding).

Accordingly, the plain language of the LLC Agreement provides that the Debtor may not commence a bankruptcy proceeding unless and until either: (1) all preferred capital has been returned to holders of preferred units; or (2) the preferred members have provided prior approval. The Court is satisfied that neither of these prerequisites occurred.

As an initial matter, it is undisputed that all preferred capital has not been returned by the Debtor to preferred unit-holders. Therefore, the Debtor was obligated to obtain prior approval from the preferred unit-holders before filing for bankruptcy. Hightstown Enterprises asserts that it, as holder of a majority of the preferred units, did not give consent; therefore, the bankruptcy was improperly filed and must be dismissed. The crux of the Debtor's opposition to the instant Motion is that the acquisition of the 4J Group's interests by Hightstown Enterprises did not comply with the noticing procedures in the LLC Agreement. Accordingly, the Debtor asserts that Hightstown Enterprises "does not have any voting rights in 3P Hightstown, and as a consequence, the consent of Hightstown Enterprises was not required." Debtor's Br. in Opp'n 2, ECF No. 33. The Debtor concludes that Hightstown Enterprises (or *any* entity) "never became a member of 3P Hightstown, never obtained any voting rights in the 3P Hightstown, and had no right to participate in the management of 3P Hightstown, either under the terms of the 3P Hightstown LLC Agreement or under applicable Delaware law." *Id.* The Court concludes that this argument, even if valid, does not weigh in the Debtor's favor.

If the Debtor is *incorrect* and the assignment of the 4J's Group's shares to Hightstown Enterprises was valid, then the Debtor was obligated to seek prior approval from Hightstown Enterprises before filing for bankruptcy. The Debtor concedes that it did not seek prior approval from Hightstown Enterprises. On the other hand, if the Debtor is *correct* and the assignment of the 4J Group's shares to Hightstown Enterprises was improper, the fact remains that the Debtor failed to solicit consent from the 4J Group before filing for bankruptcy. The Court rejects the Debtor's argument that neither Hightstown Enterprises nor the 4J Group held voting rights. Even

9

assuming that the 4J Group's transfer of shares to Hightstown Enterprises was undertaken in breach of the parties' agreement, the voting rights attached to those shares did not evaporate. They continue to belong to the entity that holds the preferred units. *See* LLC Agreement Section 10.01(c) (stating that any transfer in violation of the LLC Agreement "shall be null and void"). Regardless of who actually "holds" the units in this case—Hightstown Enterprises or the 4J Group—the Debtor failed to get the requisite consent. Therefore, under the terms of the LLC Agreement, the Debtor had no authority to commence bankruptcy proceedings.

### C. Public Policy

During the June 3, 2021 hearing on this matter, the Court expressed concern that the provision of the parties' LLC Agreement which prohibits the ability to file for bankruptcy without prior approval may be void as contrary to public policy. Indeed, certain other courts have stricken similar contractual provisions which inhibit or preclude the ability to file for bankruptcy. *See e.g. In re Lexington Hosp. Grp.*, LLC, 577 B.R. 676, (Bankr. E.D. Ky. 2017); *In re Intervention Energy Holdings, LLC*, 553 B.R. 258 (Bankr. D. Del. 2016). However, the Court determines that the instant matter is factually distinguishable, and the concerns articulated by courts that have stricken such contractual provisions are not present in this case. For the following reasons, the Court finds that the provision of the LLC Agreement at issue is not void as contrary to public policy.

In addressing this public policy issue, the Court notes that there is no Third Circuit decision on point. Therefore, this Court has examined relevant opinions of its sister courts within this circuit, as well as out-of-circuit case law. The Court is guided by two decisions in particular: *In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 208 (5th Cir. 2018), *as revised* (June 14, 2018);

and a bench ruling issued by Judge Mary Walrath, sitting in the District of Delaware, in *In re Pace Industries, LLC*, Case No. 20-10927.

The facts of this case are strikingly analogous to the circumstances in *In re Franchise*. Assuming the transfer from the 4J Group was valid, the movant here, like the movant in *In re Franchise*, is both an equity holder and a creditor. Indeed, the Debtor in this case makes much ado about the fact that Hightstown Enterprises or an affiliate is a creditor. However, this case does not present a situation whereby Hightstown Enterprises extracted an amendment to the LLC Agreement or otherwise demanded the inclusion of a provision granting it the right to prevent bankruptcy. Accordingly, this case is distinguishable from the circumstances in *In re Lexington* and *In re Intervention Energy*—wherein the lenders conditioned financing or forbearance in exchange for equity (a "golden share") and the right to block a bankruptcy filing. There is nothing in this record to suggest that Hightstown Enterprises' contribution—or, to the extent the transfer was not valid, the 4J Group's contribution—was "merely a ruse to ensure" that the Debtor repay the loan obligation. Rather, like the parties in *In re Franchise*, Hightstown Enterprises took a substantial equity stake in 3P Hightstown, which exceeds the value of its loan. Thus, like the ruling in *In re Franchise*, this Court concludes that the contractual provision at issue is not void merely due to Hightstown Enterprises' (or the 4J Group's) status as both an equity holder and a creditor.

Moreover, courts that have addressed the public policy issue have weighed the constitutional right of a person—including a corporation or LLC—to avail itself of the right to file a bankruptcy against the constitutional right of a person to contract and negotiate with creditors

11

and other stakeholders. Only the bench decision from Judge Walrath goes so far as to hold that the constitutional right to file for bankruptcy outweighs contracting parties' freedom to contract and define their relationships wholly irrespective of the nature and intent of the parties. *See In re Pace Industries, LLC*, Case No. 20-10927 (Bankr. D. Del. May 5, 2020). Her decision, however, is bottomed on the narrow, specific facts of the case before her, which are dramatically different from the circumstances presently before this Court.

The case before Judge Walrath, *In re Pace Industries*, involved a viable "company [that was] forced to close facilities and terminate a substantial portion of its workforce as a result of the pandemic." *In re Pace Industries, LLC*, Case No. 20-10927, Tr. of May 5, 2021 Hr'g at 22:5-7, ECF No. 148. The debtor in *Pace Industries* needed to file bankruptcy to preserve value, and to protect employees and creditors. It was a "prepack"—a prepackaged bankruptcy—and the lenders had agreed to payment of the creditors in full. Judge Walrath determined that the bankruptcy case would benefit most stakeholders. However, a provision in the debtor's charter permitted shareholders to block the bankruptcy filing. Judge Walrath concluded that such a provision violates public policy and is void as exercised by even a minority shareholder. Her conclusion hinged on her determination that minority shareholders owe a fiduciary duty to other shareholders and all creditors (when the corporate entity is in the "zone of insolvency"). In her view, a shareholder was obligated to consider the best interests of all parties involved before deciding to exercise its right to block the bankruptcy filing. Under the facts of *In re Pace Industries*, the particular shareholder who sought to exercise its blocking right conceded that it was considering only its own interests—and not the interests of others. Because that provision of the charter

permitted the shareholder to violate, or side-step, its fiduciary duty and infringe on the debtor's constitutional right to file for bankruptcy, Judge Walrath declared it void as violative of federal public policy. The debtor was permitted to proceed with its bankruptcy case.

The Court is unwilling to follow Judge Walrath's approach here for several reasons. First, the Court is presented with significantly different facts. In this case, the Debtor is a non-operating investor in a joint venture and there are no employees or significant creditors that stand to benefit from the bankruptcy. The record does not suggest that a bankruptcy would benefit most stakeholders. Moreover, the Court has serious reservations that non-controlling shareholders in a corporate setting have such fiduciary duties. Most significant, however, is that the Debtor is a Delaware limited liability company ("LLC"). Delaware law treats LLCs differently and establishes that only managing members of an LLC have fiduciary duties. Additionally, the Delaware Limited Liability Company Act ("LLC Act"), Title 6 §§ 18-101, *et seq*, expressly permits members to contract around even those duties. Specifically, § 18-1101 of the LLC Act allows parties to expand, restrict, or altogether eliminate members' duties—including fiduciary duties—through provisions in their limited liability company operating agreement. Such a provision is present in the instant case and the Court refers the parties to Section 13.02(a) of the LLC Agreement, titled "Limitation of Liability," which states the following:

> This Agreement is not intended to, and does not, create or impose any fiduciary duty on any Covered person. Furthermore, each of the Members and the Company hereby waives any and all fiduciary duties that, absent such waiver, may be implied by Applicable Law, and in doing so, acknowledges and agrees that the duties and obligations of each Covered Person to each other and to the Company are only as expressly set forth in this Agreement. The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Covered Person otherwise

existing at law or in equity, are agreed by the Members to replace such other duties and liabilities of such Covered Person.

Given that the parties in the instant case owe no duty to other members, or to creditors, the Court chooses not to follow Judge Walrath's lead in *In re Pace Industries*.

Furthermore, this Court has previously held that—absent a contrary provision in the operating agreement of an LLC—*only managing members* of LLC owe traditional fiduciary duties of loyalty and care to non-managing members of LLC. *See In re D'Amore*, 472 B.R. 679 (Bankr. D.N.J. 2012). In the absence of management responsibility and control, *members* of an LLC do *not* owe fiduciary duties of loyalty and care to each other under New Jersey law. *Id.* The Court sees no reason to diverge from its prior holding when analyzing the concept of fiduciary duty under Delaware law.

In *In re PennySaver USA Publ'g, LLC*, 587 B.R. 445 (Bankr. D. Del. 2018), a bankruptcy court in the District of Delaware identified three ways in which fiduciary duties can be established: (1) by an LLC agreement; (2) in the absence of an LLC agreement or where the LLC agreement is silent, case law from the Delaware Chancery Court establishes a default rule that the manager or director of the LLC owes fiduciary duties to fellow LLC members and the LLC; and (3) in "rare and highly fact-specific instances, a fiduciary duty of loyalty has been found if the defendant had actual control over an LLC which control was not granted under the LLC agreement." *Id.* at 464. The *In re Pennysaver* court added that "[t]he extension of fiduciary duties to non-directors, non-managers, and non-members is seemingly in conflict with Delaware LLC policy." (citing *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 662 (Del. Ch. 2012) (analyzing in detail the language of the

Delaware LLC Act and stating "[m]anagers and managing members owe default fiduciary duties; passive members do not.").

This Court acknowledges that, in its research, it came across one case from the Chancery Court that suggests that, absent language in the LLC Agreement establishing otherwise, "managers *and members* owe traditional fiduciary duties of loyalty and care to each other and to the company." *Kelly v. Blum*, 2010 WL 629850, at *10 (Del. Ch. Feb. 24, 2010) (emphasis added). However, that statement appears to be an anomaly—and perhaps a typo. The very next sentence in the *Kelly* opinion clarifies that "unless the LLC agreement in a manager-managed LLC explicitly expands, restricts, or eliminates traditional fiduciary duties, managers owe those duties to the LLC and its members[,] and controlling members owe those duties to minority members." Accordingly, the *Kelly* court ultimately concluded that the fiduciary duty only extended to managers or controlling members—and made no finding that a fiduciary duty is owed by non-managing members. Moreover, the cases cited by the *Kelly* court further support this Court's conclusion that non-managing/non-controlling members do not owe any fiduciary duty. *See e.g. Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, 2009 WL 1124451, at *8 (Del. Ch. Apr. 20, 2009) (holding that the manager of an LLC owes the traditional fiduciary duties of loyalty and care to the members of the LLC); *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 153 (Del. Ch. 2004) (stating that the managers owed a fiduciary duty of loyalty and care); *VGS, Inc. v. Castiel*, No. C.A. 17995, 2000 WL 1277372, at *1 (Del. Ch. Aug. 31, 2000), *aff'd,* 781 A.2d 696 (Del. 2001) (discussing managers' breach of duty of loyalty).

Other courts to analyze this issue have found that, under Delaware law, even taking on managerial duties is not enough to establish fiduciary duties. Rather, only a manager formally chosen in accord with statute and the company's operating agreement has a manager's fiduciary duties. *See, e.g.*, *In re Marchese*, 605 B.R. 676, 695 (Bankr. E.D. Pa. 2019). At least one other court has dismissed claims for breach of fiduciary duties in adversary proceedings filed against members where the plaintiff failed to allege that the member was a manager, director, or controlling member, or that operating agreements imposed fiduciary duties on the member. *See, e.g. In re S. Canaan Cellular Invs., LLC*, 2010 WL 3306907 (E.D. Pa. Aug. 16, 2010) (finding it was insufficient to state claim against member for breach of fiduciary duties which he owed to LLCs under governing Delaware law, absent any allegation in complaint that member had position of authority in LLCs or that LLCs' operating agreements imposed fiduciary duties on members who were neither managers nor controlling members of LLCs).

In sum, there is no breach of fiduciary duty which renders the provision at issue violative of public policy. Instead, Delaware's LLC Act grants LLC members extreme contractual freedom. The parties in the present case took advantage of the wide latitude afforded to them by the LLC Act in defining their relationships in the LLC Agreement and explicitly waiving any fiduciary duties. Because the provision of the LLC Agreement at issue is not void as contrary to public policy, its terms must control. The Debtor's bankruptcy case was filed in violation of those terms and, as a result, must be dismissed.

### III. Conclusion

For the reasons set forth above, Hightstown Enterprises Motion to Dismiss is DENIED AS MOOT and the Debtor's bankruptcy case is DISMISSED by the Court, *sua sponte*. The Court will enter a form of order consistent with this Opinion.

                                                */s/ Michael B. Kaplan*
                                                Honorable Michael B. Kaplan
                                                United States Bankruptcy Judge

Dated: July 22, 2021